## Conley v. Joyce

*Alexander A. DiSanti*, for plaintiffs.
*Melvin G. Levy*, for defendants.

deFURIA, *J.*, December 17, 1975—Plaintiffs in the case at bar are regular full-time police officers employed by defendant, City of Chester. They claim overtime compensation, pursuant to an award entered on November 29, 1972, by a board of arbitrators. The arbitrators were appointed pursuant to Act 111 of June 24, 1968, P.L. 237, 43 P.S. §217.1 et seq., which provides for collective bargaining and arbitration in connection with policemen and firemen employed by political subdivisions of the Commonwealth or by the Commonwealth of Pennsylvania.

Plaintiffs' claim is for overtime compensation at time and one-half overtime for duty time in excess of 320 hours in an eight-week period and overtime compensation at regular time for Criminal Court appearances during off-duty time. Defendants, officials of the city, contend that the applicable provisions of the arbitration award are unauthorized by law, illegal and, therefore, unenforceable, and, therefore, refused to make such payments.

Plaintiffs thereupon instituted this action in mandamus.

The pertinent provision of the award for purposes of this litigation is paragraph 3 thereof, providing that:

"Each member of the department shall receive time and a half for all time in excess of 320 hours worked during an eight week period. The Board suggests in order to make this workable, that the department continue the four platoon system but do so on a six day on and two day off basis with regularly scheduled days off for each officer during said eight week period resulting in a normal schedule of 320 work hours in each eight week period. Payment shall be made for overtime in the paycheck for the

ninth week to the extent that no compensatory time has been given for time worked in excess of 320 hours for said eight week period. Compensating time may however be given either during the eight week period or during the ninth week. Overtime for duty as a witness in a criminal court shall be paid for only as straight time and civil time shall not constitute overtime."

In arguing that the payment of overtime in accordance with the award would constitute an illegal act on their part, defendants rely upon the Act of June 23, 1931, P.L. 932, art. XX, sec. 2004, as amended, 53 P.S. §37004, being part of The Third Class City Code. It provides that:

"No city shall employ or require any police officer to remain on duty for more than eight hours in any twenty-four consecutive hours, nor more than forty-four hours in any one week, unless in emergency cases for the suppression of riots or tumults or the preservation of the public peace: Provided, That for the duration of any war in which the United States is engaged, and six months thereafter, the hours of service may exceed the number hereinbefore provided as the maximum number of hours of service, and in such cases, council shall provide for the payment of extra compensation for any hours of service in excess of such maximum hours of service, at the same rate as paid for regular service. Nothing contained herein shall prevent any such city from requiring any such police officer to remain on duty or to work sixteen hours in any twenty-four consecutive hours, not more than one day each week, if required by a change in working hours or a change in shifts. Cities shall permit every member of the police de-

partment to have at least twenty-four consecutive hours of rest in every calendar week, except in emergency cases for the suppression of riots or tumults or the preservation of the public peace, in times of war, riot, conflagration, or public celebrations, and to have an annual vacation of not less than fourteen days without diminution of the salary or compensation fixed by ordinance. When the mayor declares an emergency and requires police officers to remain on duty overtime such officers shall be compensated on the basis of their annual salary."

The Third Class City Code, thus, clearly provides that:

1. The city cannot employ or require any police officer to remain on duty for more than eight hours in any consecutive 24 hours;

2. The city cannot employ or require any police officer to remain on duty for more than 44 hours in any one week;

3. Except in certain emergency situations duly declared by the mayor, when regular compensation shall be paid for such additional time.

### What Are The Limits of Overtime?

It is clear that the code prohibits the city from *employing* or *requiring* an officer to work more than eight hours a day, or more than 44 hours per week. Plaintiffs contend that the award requires the city to pay, at an overtime rate, for work done by an officer beyond eight hours in a day or 40 hours in a week.

The award provides for overtime pay for time in excess of 320 hours in an eight-week period. The effect, of course, is to grant overtime pay for more

than eight hours in a day or 40 hours in a week. The city cannot schedule daily duty hours of less than eight hours to make up for daily duty time of more than eight hours in order to stay within the weekly limit of 44 hours, without violating the daily limit.

The city code limits the work week to 44 hours with no more than eight hours in any one day (16 hours when shifts change) or a maximum of five and a half days. The award provides for overtime beyond 320 hours in an eight-week period, or overtime for any week over 40 hours.

It would appear that the code and the award are in conflict. A policeman cannot work more than eight hours in one day, absent a change of shift, under the code. If he works more than 40 hours in a week, he must receive overtime under the award, regardless of allocation on a daily or weekly basis.

As to overtime beyond 40 hours and up to 44 hours beyond the normal eight hour day, there is no dispute. If an officer works more than 40 hours in a week, and not more than eight hours in any day, he is entitled to overtime pay up to 44 hours.

Plaintiffs allege that the city should pay for any overtime scheduled beyond 44 hours per week. The city answers that it is prohibited from doing so by law.

We hold that the arbitration award is limited by and to be interpreted as complying with The Third Class City Code. That code prohibits the *employment* or scheduling by the city of work beyond 44 hours in any week, and eight hours in any day, except for shift change. Therefore, the award, itself, merely provides for overtime pay for regular hours worked in excess of 40 hours in a week up to a maximum of 44 hours.

The city cannot employ or require officers to work

more than eight hours in any one 24-hour period, except for change of shift, nor can it pay compensation for any work done over the daily limit.

The city cannot employ or require officers to work more than 44 hours in any week.

Act 111 of 1968, supra, provides for binding arbitration, but the award of arbitrators cannot order a municipality to do that which the municipality is not lawfully authorized to do: Washington Arbitration Case, 436 Pa. 168, 259 A. 2d 437 (1969); Taylor v. Abernathy, 422 Pa. 629, 222 A. 2d 863 (1966); Allegheny County Firefighters, Local 1038 v. Allegheny County, 7 Pa. Commonwealth Ct. 81, 299 A. 2d 60 (1973); Tate v. Antosh, 3 Pa. Commonwealth Ct. 144, 281 A. 2d 192 (1971); Cheltenham Twp. v. Cheltenham Police Dept., 8 Pa. Commonwealth Ct. 360, 301 A. 2d 430 (1973); Heilman v. Lebanon, 10 Lebanon 377 (1965), affirmed 206 Pa. Superior Ct. 748, 213 A. 2d 409 (1965).

The test is whether the municipality is expressly or impliedly authorized to do that which the arbitration award requires. In the instant case, plaintiffs have not only failed to show any such authorization, but there are express prohibitions to use of policemen beyond eight hours in a day or 44 in a week, except in cases of emergency declared by the mayor.

The arbitration award must be presumed to be in compliance with the law. That award merely fixes 40 hours per week as the limit for regular pay, and beyond 40 hours for overtime pay. The limit for overtime pay is not set beyond 44 hours. Therefore, the award itself contains a legal limit of 44 hours, or a maximum weekly period of overtime of four hours.

The city's contention that the code prohibits any

overtime pay in excess of the usual rate is without merit. The code does provide that in cases of emergency declared by the mayor, the city may require policemen to work overtime, and such overtime work shall be compensated at the *regular rate*. However, this is neither a prohibition of extra payment for ordinary overtime if the city desires to do so, as long as it keeps within the daily and weekly hour provisions, nor is it a direction that overtime shall be paid at regular rates.

If and when an emergency is declared, and claim is made under the award, a novel situation will arise, which, fortunately, is not before us now.

### Criminal Court Attendance as Overtime

The arbitration award also provided for overtime at the regular rate for attendance in criminal court in excess of the 320-hour eight-week period. This issue has many ramifications.

Is a police officer on duty when he appears in criminal court as a witness? Is he on duty when he appears at times that he is not scheduled to work for the city? Is he appearing at the behest of, and/or subpoena of the Commonwealth? Is he working for the city when he so acts?

It is difficult to ascertain plaintiffs' position on this issue. Insofar as plaintiffs may claim that court attendance over eight hours in any 24-hour period must be compensated by overtime pay, the law is clear. The city cannot require a policeman to work more than eight hours in a day. Therefore, no extra compensation at daily or overtime rate is due an officer for attendance in court at times beyond the eight-hour daily limit.

For the same reason, no time in court beyond the daily limit may be accumulated on a weekly basis.

While a policeman appears in court as a citizen, and is entitled to witness fees, Code §2008, 53 P.S. §37008, it cannot be said that he is not acting as a police officer, nor that his efforts do not benefit the city. A policeman's work consists, in its final stages, in the prosecution of alleged lawbreakers. After all, it is his employment that brings him there.

The issue must be resolved under the same rights and restraints provided in The Third Class City Code and the arbitration award:

1. If the officer appears in court, within any 24-hour period, *after or outside* his eight-hour scheduled city duty, the city cannot pay him any compensation for such appearance.

2. If the officer appears in court *during* his eight-hour scheduled city duty, he shall receive compensation from the city at the regular rate up to 40 hours per week, and at the overtime rate for over 40 hours but not beyond 44 hours.

Wherefore, we enter the following

## ORDER

And now, December 17, 1975, it is ordered that

1. Defendants ascertain and determine for all entitled members of the police force of the City of Chester their hours on scheduled duty since the effective date of the arbitration award of January 1, 1973:

(a) On a weekly basis.

(b) A day to include no more than eight hours in any 24 consecutive hours, whether on regular duty or appearing in court.

(c) Court appearances to be included when on scheduled duty.

2. Defendants pay to plaintiffs entitled thereto overtime compensation at the rate of one and a

half times the regular rate for all work over 40 hours in one week up to a limit of 44 hours.

3. Payment for past services shall be made in a lump sum to each officer entitled.

4. Payment, as ordered herein, for future weekly overtime services shall be made in the manner and times provided in the arbitration award.